IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Roadway Services, Inc.,   Case No. 3:20-cv-02777-JGC

      Plaintiff,

  v.   **ORDER**

Travelers Casualty & Surety Company
of America,

      Defendant.

This is an insurance coverage dispute. Plaintiff, Roadway Services, Inc. (Roadway) seeks coverage from Travelers Casualty & Surety Company of America (Travelers) for defense expenses arising out of a wrongful death action in state court.

Travelers contends that two exclusions in the relevant policy shield it from the obligation to cover Roadway's defense expenses. The parties disagree on the correct interpretation of those exclusions.

Pending are the parties' cross-motions for summary judgment. (Docs. 8, 10). For the following reasons, I grant plaintiff's motion and deny defendant's motion.

### Background

#### 1. The Underlying Lawsuit

Roadway seeks coverage for its expenses in defending a wrongful death lawsuit in Ohio state court. That lawsuit involves the death of a Roadway employee, Nathan Soto, who was killed in an automobile accident while performing his job duties.

The complaint in the underlying case recounts the following facts. On the afternoon of August 29, 2018, Mr. Soto and a co-worker traveled to an area on U.S. Highway 24 near Waterville, Ohio to assist with a repaving project. (Doc. 1-2, pgID 190, 195). This project required them to place orange, reflectorized barrels in and along the left shoulder of the newly repaved road surface. (*Id.*, pgID 191).

Mr. Soto and his co-worker parked their truck along the right side of the road and began to run back and forth across traffic to place the barrels on the left shoulder. (*Id.*). As they were doing so, a driver struck and killed Mr. Soto. (*Id.*, pgID 192).

On March 6, 2020, Mr. Soto's wife filed a complaint in the Lucas County Court of Common Pleas against Roadway and two other defendants. She claims that Roadway committed an intentional tort against Mr. Soto, in violation of Ohio Rev. Code Ann. § 2745.01. In support of this claim, she alleges that Roadway created a dangerous work environment and failed to institute adequate safety controls.

Ms. Soto requests damages for "[l]osses suffered by the next of kin as a result of decedent's death, including […] mental anguish and sorrow." (*Id.*, pgID 198).

## 2.    The Insurance Policy

The parties agree that the applicable insurance policy is the Private Company Directors and Officers Liability Policy (D&O Policy). (*Id.*, pgID 63-78). The policy covers the time period of April 1, 2019 until March 15, 2020. (*Id.*, pgID 22).

The D&O Policy contains three insuring agreements, and the parties agree that Insuring Agreement C applies here. That agreement states that Travelers "will pay on behalf of […] the **Insured Organization**, **Loss** for **Wrongful Acts**, resulting from any **Claim** first made during the **Policy Period**."[1] (*Id.*, pgID 63). In this case, Roadway is the Insured Organization.

The policy defines a "Claim" as including "1. a written demand […] for monetary damages or non-monetary relief" or "2. a civil proceeding commenced by service of a complaint or similar pleading." (*Id.*).

It defines a "Wrongful Act" as including "any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, the **Insured Organization**." (*Id.*, pgID 65).

After setting forth the definitions that apply to the D&O Policy, the policy lists several exclusions from coverage, titled "Exclusions Applicable to All Losses." (*Id.*, pgID 66). Two of those exclusions are at issue in this case.

The first is Exclusion A(2), which provides both an exclusion and a relevant exception:

> The Company will not be liable for **Loss** for any **Claim** for any bodily injury, sickness, disease, death, loss of consortium, emotional distress, mental anguish, humiliation, loss of reputation, libel, slander, oral or written publication of defamatory or disparaging material, or invasion of privacy; provided that this exclusion will not apply to:
> a. any **Claim** for emotional distress, mental anguish, or humiliation with respect to any employment related **Wrongful Act**

---

[1] Travelers uses bolded letters to indicate that a term is a defined term in the D&O Policy.

(*Id.*, pgID 66).

The second is Exclusion A(13)(d), which provides:

> The Company will not be liable for **Loss** for any **Claim**, with respect to Insuring Agreement C. only:
> d. based upon or arising out of any employment related **Wrongful Act**

(*Id.*, pgID 68).

### 3. Roadway Requests Coverage

Roadway sought coverage from Travelers for its expenses in defending Ms. Soto's state court wrongful death action. However, Travelers denied that coverage in an April 21, 2020 coverage letter and several follow-up communications. (*Id.*, pgID 202-23).

In these letters, Travelers relied on the two exclusions discussed above, as well as several additional provisions that are no longer at issue. (*Id.*). Travelers emphasized that Exclusion A(13)(d) expressly excludes the requested coverage because Roadway's claim falls under Insuring Agreement C and is a claim against an Insured Organization seeking recovery for Loss for Wrongful Acts. (*Id.*).

The correspondence between the parties continued until at least June 5, 2020, and Travelers continued to deny coverage. (*Id.*, pgID 222-23). Roadway filed this lawsuit in the Henry County Court of Common Pleas on November 18, 2020. (*Id.*, pgID 6). Travelers removed the case on the basis of diversity jurisdiction on December 16, 2020.

Both parties subsequently filed cross-motions for summary judgment.

### Standard of Review

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The parties do not dispute the facts of this case. Rather, they disagree as to the proper interpretation of the insurance contract. Because the interpretation of a contract is a legal question, and there are no genuine issues of material fact, I decide this case as a matter of law. *See United States v. Donovan*, 348 F.3d 509, 512 (6th Cir. 2003) (finding the district court properly determined that there were no factual issues and that it should decide the issue of contractual interpretation as a matter of law).

### Discussion

3

The central question in this case is whether the D&O Policy requires Travelers to cover Roadway's defense expenses. I find that it does and explain my reasoning below.

The parties agree on several issues that bear on the coverage determination. They agree that the claim in the underlying lawsuit is against an Insured Organization. They agree that claim therefore arises under Insuring Agreement C. And they agree that this case involves an "employment related Wrongful Act."

However, the parties disagree about the proper interpretation of the policy's exclusions and the ultimate issue of coverage. Both argue that the contract is unambiguous in their favor. In the alternative, Roadway argues that if I find the contract is ambiguous, it still prevails because I must construe the contract against the insurer, Travelers.

Travelers advances two main arguments against coverage: 1) the exception to Exclusion A(2) does not apply because the underlying lawsuit does not involve a Claim for mental anguish as the policy defines that term, and 2) Exclusion A(13)(d) is unambiguous in excluding coverage for an "employment related Wrongful Act" under Insuring Agreement C, and this claim falls squarely within that exclusion.

Roadway responds that 1) the exception to Exclusion A(2) does apply because the underlying lawsuit falls within the policy's definition of a Claim, and 2) Exclusion A(13)(d) does not unequivocally revoke coverage for the underlying lawsuit because the exception to Exclusion A(2) provides a carve back for that coverage.

1. **Applicable Law**

The parties agree on the general principles of Ohio law that apply to this case. Because the case involves Travelers' coverage of defense expenses rather than indemnification of the underlying claims, I look to Ohio law regarding an insurer's duty to defend.

As the Ohio Supreme Court has explained,

> the duty to defend is broader than and distinct from the duty to indemnify. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 19. The duty to defend is determined by the scope of the allegations in the complaint. Id. If the allegations state a claim that potentially or arguably falls within the liability insurance coverage, then the insurer must defend the insured in the action. Id., ¶ 19. But if all the claims are clearly and indisputably outside the contracted coverage, the insurer need not defend the insured. Id.

*Ward v. United Foundries, Inc.*, 129 Ohio St. 3d 292, 295, 951 N.E.2d 770, 773 (2011).

Ohio law regarding contractual interpretation is also relevant. In Ohio, the interpretation of an insurance contract is a matter of law. *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St. 2d 166, 167, 436 N.E.2d 1347, 1348 (1982). The same general principles apply to the interpretation of insurance contracts as to other types of contracts.

4

*Id.* For example, "words and phrases used in an insurance policy must be given their natural and commonly accepted meaning" if not otherwise defined. *Id.* at 167-68. The contract must be read as a whole, and "no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible." *Pitman v. Allstate Ins. Co.*, No. CA91-06-039, 1991 WL 247528, at *2 (Ohio Ct. App. Nov. 25, 1991).

"The fundamental goal […] is to ascertain the intent of the parties from a reading of the contract in its entirety, and to settle upon a reasonable interpretation of any disputed terms in a manner calculated to give the agreement its intended effect." *ALD Concrete & Grading Co. v. Chem-Masters Corp.*, 111 Ohio App. 3d 759, 765, 677 N.E.2d 362, 366 (1996).

Where the language of the contract is unambiguous, it is axiomatic that a court "cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Sommer v. Heritage Mut. Ins. Co.,* No. E-98-008, 1998 WL 456599, at *1 (Ohio Ct. App. July 10, 1998). Furthermore, I should not "adopt a forced or strained construction of an insurance contract" or read an ambiguity into it where one does not exist. *Sturgeon v. Dubois*, No. 00AP-1024, 2001 WL 803898, at *2 (Ohio Ct. App. July 17, 2001).

However, where the terms of an insurance contract are ambiguous, I must construe them "liberally in favor of coverage." *Id.* In effect, I must adopt "any reasonable construction of the policy which results in coverage." *Sherwin-Williams Co. v. Ins. Co. of State of Pennsylvania*, 863 F. Supp. 542, 552 (N.D. Ohio 1994) (Wells, J.).

The burden on the insurer in a dispute such as this one is high. The insurer "must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question." *Andersen v. Highland House Co.*, 93 Ohio St. 3d 547, 549, 757 N.E.2d 329, 332 (2001).

And where an insurance contract lists specific exclusions from coverage, those exclusions must be "clear and exact" or "arise by necessary implication from policy language." *Sherwin-Williams*, *supra*, 863 F. Supp. at 552. "Where the choice is between depriving the insured of a substantial portion of his coverage through operation of an exclusion clause or permitting a broader coverage, the interpretation must be in favor of the insured to provide the broader coverage." *River Servs. Co. v. Hartford Acc. & Indem. Co.*, 449 F. Supp. 622, 626 (N.D. Ohio 1977) (Lambros, J.). In other words, "that which is not clearly excluded is included." *Sherwin-Williams*, *supra*, 863 F. Supp. at 552.

2. **Application of the Exception to Exclusion A(2)**

Travelers first disputes that the exception to Exclusion A(2) applies to Roadway's claim here.

Exclusion A(2) excludes coverage for "**Loss** for any **Claim** for any bodily injury, sickness, disease, death, loss of consortium, emotional distress, mental anguish, humiliation, loss of reputation, libel, slander, oral or written publication of defamatory or disparaging material, or invasion of privacy." (Doc. 1-2, pgID 66).

But there is an exception to that exclusion at A(2)(a). It provides that the exclusion will not apply to "any **Claim** for emotional distress, mental anguish, or humiliation with respect to any employment related **Wrongful Act**." (*Id.*).

Roadway argues that in the underlying action, Ms. Soto has made a claim for mental anguish with respect to an "employment related Wrongful Act." Therefore, the exception to Exclusion A(2) applies. Roadway points out that in her request for damages, Ms. Soto includes "[l]osses suffered by the next of kin as a result of decedent's death, including […] [m]ental anguish and sorrow." (*Id.*, pgID 198). Roadway asserts that this constitutes a Claim for mental anguish under the definition set forth in the D&O Policy.

Travelers disagrees, arguing that a Claim under the D&O Policy is akin to a cause of action. Because Ms. Soto has only alleged mental anguish as a part of damages and not a cause of action, the exception does not apply, and Roadway is not entitled to coverage.

The D&O Policy defines a Claim as "a written demand […] for monetary damages or non-monetary relief" or "a civil proceeding commenced by service of a complaint or similar pleading." (*Id.*, pgID 63).

The first definition squarely applies here. By including a request for damages associated with mental anguish in her complaint, Ms. Soto has made "a written demand […] for monetary damages" related to her mental anguish. She therefore has set out a Claim for mental anguish as the D&O Policy defines it.

Examining the broader exception to Exclusion A(2), Ms. Soto's Claim for mental anguish is with respect to an "employment related Wrongful Act." Ms. Soto alleges in the underlying complaint that Roadway violated Ohio law by "creating a dangerous work situation" and failing to institute adequate safety controls. (*Id.*, pgID 196).

A Wrongful Act, according to the D&O Policy, includes "any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, the Insured Organization." (*Id.*, pgID 65). The underlying claim for wrongful death fits this description. Furthermore, as noted above, the parties do not dispute that this case involves an "employment related Wrongful Act."

6

Travelers seems to rely, at least in part, on the common legal meaning of the word claim. While it is true that the word claim often means cause of action, that is not the definition that Travelers has included in the D&O Policy. And although it is a principle of contract interpretation to afford words their ordinary meaning, that principle does not apply where the drafter selects a specific meaning. *See Sutton Bank v. Progressive Polymers, L.L.C.*, 161 Ohio St. 3d 387, 392, 163 N.E.3d 546, 552-53 (2020) ("[W]hen parties to a contract have given a word a specific meaning by expressly defining it in the contract, that definition will generally override whatever definition might otherwise be established by an examination of the word's ordinary meaning or common usage.").

Further, the language of Exclusion A(2) cuts against Travelers' proposed definition. The exclusion provides that Travelers will not be liable for losses associated with any Claim for bodily injury, sickness, disease, humiliation, or loss of reputation, among other Claims. Those Claims are not causes of action. A plaintiff cannot assert a cause of action for sickness or disease, for example. Therefore, Travelers' proposed definition of Claim as being a cause of action does not make sense in the context of the contract.

I therefore find that the plaintiff in the underlying lawsuit has asserted a Claim for mental anguish, and the exception to Exclusion A(2) applies.

### 3. Effect of Exclusion A(13)(d)

Travelers argues that even if the exception to Exclusion A(2) applies, the D&O Policy is unambiguous in excluding coverage under Exclusion A(13)(d).

Roadway responds that while Exclusion A(13)(d) may appear to exclude coverage here, the exception to Exclusion A(2) functions as a carve back.

Exclusion A(13)(d) provides: "The Company will not be liable for **Loss** for any **Claim**, with respect to Insuring Agreement C only: based upon or arising out of any employment related **Wrongful Act**." (Doc. 1-2, pgID 68).

On its face, this language plainly applies to the underlying lawsuit here. Roadway does not argue otherwise. The parties agree that Insuring Agreement C applies in this case and that the underlying lawsuit involves an "employment related Wrongful Act." Accordingly, Exclusion A(13)(d) appears to exclude coverage here.

However, the exception to Exclusion A(2) muddies the waters. As discussed in the previous section, that exception applies to this case as well. It provides that any Claim for mental anguish with respect to any

7

"employment related Wrongful Act" will be covered. Accordingly, the D&O Policy contains an exclusion that appears to revoke coverage and an exception that appears to grant coverage.

The parties address this apparent discrepancy, each arguing that the provisions can be read consistently with each other, making the policy unambiguous in its favor.

Travelers argues that the policy is unambiguous in revoking coverage because the exception to Exclusion A(2) applies only to Insuring Agreements A and B. Since this case arises under Insuring Agreement C, the exception does not apply, and Exclusion A(13)(d) controls because it is specific to Insuring Agreement C.

The issue with that explanation, however, is that there is nothing in Exclusion A(2) indicating that it applies only to Insuring Agreements A and B. Rather, the heading for that section of the D&O Policy reads "Exclusions Applicable to All Loss." This indicates that Exclusion A(2) and its accompanying exception apply to all three insuring agreements.

Travelers' argument relies, then, on an inference. The inference is that because Exclusion A(13)(d) applies specifically to Insuring Agreement C, the exception to Exclusion A(2) cannot also apply to Insuring Agreement C.

Roadway argues that the policy is unambiguous in providing coverage because the exception to Exclusion A(2) functions as a carve back. That is, while Exclusion A(13)(d) excludes coverage for some "employment related Wrongful Acts" under Insuring Agreement C, it does not exclude coverage for all wrongful acts. The exception to Exclusion A(2) makes clear that Travelers will provide coverage for "employment related Wrongful Acts" if they involve emotional distress, mental anguish, or humiliation.

This argument presents similar issues. As Travelers points out, Exclusion A(13)(d) does not reference a carve out or indicate that certain "employment related Wrongful Acts" will, in fact, be covered. Instead, it reads as a categorical bar.

Roadway, therefore, also relies on an inference in support of its interpretation. That inference is that the exception to Exclusion A(2) must be a carve out because it applies to claims that would otherwise be excluded under Exclusion A(13)(d).

In determining whether the D&O Policy provides coverage, I must return to the central question governing an insurer's duty to defend. That is whether the D&O Policy "potentially" or "arguably" covers a claim at issue in the underlying lawsuit. *See Ward*, *supra*, 129 Ohio St. 3d at 295. If it does, the insurer must provide coverage for

8

defense expenses. This is a difficult standard for the insurer to overcome, and I find that Travelers has failed to do so here.

The only way that I could find in favor of Travelers is if "all the claims are clearly and indisputably outside the contracted coverage." *Id.* In other words, I would need to accept Travelers' argument that the contract is unambiguous in excluding coverage under Exclusion A(13)(d). I find that it is not.

While Exclusion A(13)(d) appears to exclude coverage, the exception to Exclusion A(2) appears to grant it. In attempting to overcome this discrepancy, Travelers essentially urges me to read Exclusion A(13)(d) in isolation. It argues that Exclusion A(13)(d) is unambiguous, and therefore, the exception to Exclusion A(2) cannot mean what it appears to mean. However, I must read the contract as a whole and cannot consider provisions in isolation. *Equity Plan. Corp. v. Westfield Ins. Co.*, 522 F. Supp. 3d 308, 316 (N.D. Ohio 2021) (Barker, J.).

Travelers further highlights several principles of contract interpretation that it argues show the contract is unambiguous.

First, Travelers argues that Roadway's interpretation of the contract would render Exclusion A(13)(d) superfluous. And it is a fundamental principle of contract interpretation that "[c]ourts should not interpret contracts in a way that renders at least one clause superfluous or meaningless." *Wilkerson v. Am. Fam. Ins. Co.*, No. 1:19CV2425, 2020 WL 5891971, at *3 (N.D. Ohio) (Boyko, J.).

However, I disagree that Roadway's interpretation would render Exclusion A(13)(d) superfluous. According to Roadway's interpretation, the exception to Exclusion A(2) is a carve back for three narrow types of claims: emotional distress, mental anguish, and humiliation. Exclusion A(13)(d) would still apply to other categories of claims, provided that they arose under Insuring Agreement C and out of an "employment related Wrongful Act."

Second, Travelers argues that Exclusion A(13)(d) is a specific provision, so it should control the more general provision, which is Exclusion A(2). Travelers asserts that Exclusion A(13)(d) is more specific because it applies only to Insuring Agreement C, while Exclusion A(2) applies more broadly to all insuring agreements.

Travelers is correct that "when there exists a conflict between specific information and general boilerplate language in a contract, precedence must be given to the specific information or language." *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 519 (6th Cir. 1999) (applying Ohio law). But it is not clear that Exclusion A(13)(d) is more specific than Exclusion A(2).

9

It is certainly arguable that Exclusion A(13)(d) is more specific because it applies to only one insuring agreement. However, it is also arguable that Exclusion A(2) is more specific because it applies to a narrower set of claims. While Exclusion A(13)(d) applies to any claim "based on or arising out of any employment related Wrongful Act," Exclusion A(2) only applies to a list of fourteen specific claims. Each exclusion is more specific than the other in a different way.

Therefore, neither of the tenants of contractual interpretation that Travelers proposes convinces me that the contract is unambiguous in excluding coverage.

Travelers has not shown that all claims in the underlying lawsuit are "clearly and indisputably outside the contracted coverage," as Ohio law requires. *Ward*, *supra*, 129 Ohio St. 3d at 295. It then follows that the D&O Policy at least arguably or potentially covers a claim at issue in this case.

In so ruling, I do not find that Roadway's interpretation of the contract is correct and that the D&O Policy unambiguously covers a claim in the underlying lawsuit. But I do find that Roadway has met its burden to show that the exception to Exclusion A(2) is potentially or arguably a carve back for coverage.

Travelers is thus required to cover defense expenses.[2]

## Conclusion

It is, therefore,

ORDERED THAT

1. Plaintiff's motion for summary judgment (Doc. 8) be, and the same hereby is, granted;
2. Defendant's motion for summary judgment (Doc. 10) be, and the same hereby is, denied; and
3. The parties shall file a status report on or before January 31, 2022 indicating what further proceedings are necessary and submitting a proposed timetable.

So ordered.

James G. Carr<br>
Sr. U.S. District Judge

---

[2] To be clear, I express no opinion regarding Travelers' duty to indemnify because the duty to indemnify "arises only if liability in fact exists under the policy" and if there is "proof of the facts underlying the complaint." *Lexington Ins. Co. v. DunnWell, LLC*, N.E.3d 1066, 1082 (2016). There has been no determination as to liability here because the underlying lawsuit is still pending.